IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **LEBARRON EMON CHATMAN** | **PETITIONER** |
| **VERSUS** | **CIVIL ACTION NO. 1:08cv198-LG-RHW** |
| **STATE OF MISSISSIPPI and** | |
| **RONALD KING** | **RESPONDENTS** |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATION

BEFORE THE COURT are [1] the May 19, 2008 application of Lebarron Emon Chatman for writ of habeas corpus pursuant to 28 U.S.C. § 2254, and [5] amended petition filed June 6, 2008. Respondents timely answered pursuant to Rule 5 of the Rules Governing Section 2254 cases in the United States District Courts. Also before the Court is [18] Petitioner's April 9, 2010 motion to file a supplemental brief or alternatively to amend his petition for habeas corpus, and [20] a 19-page attachment to motion [18] filed May 7, 2010. Having considered the pleadings, records on file, briefs and arguments of the parties, and the relevant legal authority, the undersigned U.S. Magistrate Judge is of the opinion that both Petitioner's motion to file a supplemental brief or to amend his petition and his request for relief pursuant to 28 U.S.C. § 2254 should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Lebarron Chatman and two others were indicted December 12, 2002 in the Circuit Court of Jackson County, Mississippi, for the June 14, 2002 murder of Anthony James. (R. vol. 1, p. 8.) Following a severance, Chatman's trial began on July 26, 2004, and concluded with the jury's finding him guilty of depraved heart murder on July 28, 2004. (R. vol. 4, p. 370) In accordance

with Mississippi law,[1] the Court sentenced Chatman to life imprisonment in the custody of the Mississippi Department of Corrections. (R. vol. 1, p. 68; vol. 4, p. 371) Chatman appealed his conviction, asserting the following errors by the trial court:

(1) allowing an instruction on depraved heart murder, when Chatman was indicted for deliberate design murder;

(2) the evidence was sufficient to prove only manslaughter;

(3) allowing forensic pathologist Dr. Paul McGarry to testify beyond the scope of his expertise;

(4) the prosecutor's referring to Chatman and his co-defendants in closing argument as "gangbangers;" and

(5) violation of Chatman's equal protection rights by the operation of *Miss. Code Ann.* § 47-5-139, which, due to Chatman's age, would result in his being required to serve more of his life sentence than older inmates before he would be eligible to petition for early release.

On July 25, 2006, the Mississippi Court of Appeals affirmed Chatman's conviction and sentence. *Chatman v. State*, 952 So. 2d 945 (Miss. 2006), *reh'g denied*, January 23, 2007.

On June 11, 2007, Chatman filed a *pro se* application with the Mississippi Supreme Court for leave to proceed in the trial court on a motion for post-conviction collateral relief as to the following issues:

(A) the trial court's failure to apply *Quick v. State* to his case, which gave the prosecution a tactical advantage;

(B) the courts' errors in allowing the prosecution's inflammatory closing argument, and in holding the error harmless;

(C) the courts' denying Chatman a forum for his equal protection argument;

(D) the trial court's failure to bifurcate the trial;

(E) the courts' errors in "allowing all attorneys to represent petitioner 'as effective

---

[1] Miss. Code Ann. § 97-3-21 provides that one convicted of murder "shall be sentenced by the court to imprisonment for life in the State Penitentiary."

counsels,' but den[ying] every claim they presented to the court;"

(F)	the court's allowing tainted evidence;

(G)	the trial court's allowed Dr. McGarry to testify as a crime scene reenactment specialist;

(H)	the court's failure to define reasonable doubt;

(I)	the existence of evidence of material facts not previously presented and heard;

(J)	the court's cumulative errors; and

(K)	the failure of the trial court to ask whether the parties wanted to poll the jury.

By order entered February 20, 2008, the Mississippi Supreme Court denied Chatman's application for leave to proceed with a post conviction motion in the trial court, finding *Miss. Code Ann*. § 99-39-21 procedurally barred most of the issues raised in the petition as they "were raised at trial or on direct appeal or were capable of being raised in those proceedings," and finding Chatman's claims of ineffective assistance of counsel and newly discovered evidence without merit. [10-2, p. 7]

In the Petition filed in this Court, Chatman urges he is entitled to federal habeas relief based on four grounds:

1.	Petitioner was indicted for 97-3-19(a) deliberate design murder. The Court allowed ... jury instructions for the prosecution to secure a verdict for 97-3-19(b) depraved heart murder ... [which] lowered the bar and standard used in finding the criteria for the indictment of deliberate design. ...

2.	The Court failed to inquire "would either party like to poll the jury," [which] is a mandate by MS U.R.C.C.C. Rule 3.10.

3.	Prosecuting Att. referred to Petitioner as a gangbanger, over sustained objection he reiterated this a second time. Petitioner's atty. objected again but the trial court overruled and actually stated that the Prosecutor clarified his mistake when in actuality he did not. The ... court ruled this should be reversible but evidence was overwhelmed (*sic*) but weight of evidence is not the bar when a prosecutor commits misconduct.

4. Counsel was ineffective by failing to strike Juror no. 9-Felicia Williams, her sister had been murdered the previous year, she could not be impartial.
Counsel failed to object to Charles Byrd bailiff being around jury. Mr. Byrd is a direct relative of Sheriff Mike Byrd, Sr. and Juror No. 9 on record stated her relation to Charles Byrd.
Counsel failed to ask for a change of venue.
Counsel failed to see that jury was sequestered.
Counsel failed to object to David Whitehead testifying to gunshot residue.
Counsel failed to call Daniel Cockerham as a witness when he alone had positively identified shooter.

Respondents argue that Grounds One and Three present issues reviewed and denied on the merits on direct appeal and/or in Chatman's application to proceed with a post conviction motion, and that Petitioner has failed to exhaust the Ground Four claims of ineffective assistance of counsel, as he has never presented those claims to the state's highest court. The statute governing these proceedings, 28 U.S.C. § 2254(d), provides that:

> (d) an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to federal law when it is opposite to a United States Supreme Court decision on a question of law or when it is at variance with a Supreme Court decision upon "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves an unreasonable application of federal law when the state court properly identifies the applicable federal legal principle but applies it in an objectively unreasonable manner. *Id*. at 409. Where "the state court's application of governing federal law is challenged,

it must be shown to be not only erroneous, but objectively unreasonable." *Middleton v. McNeil,* 541 U.S. 433, 436, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004) *(per curiam)* (quoting *Yarborough v. Gentry,* 540 U.S. 1, 5, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003) *(per curiam)*); see also *Schriro v. Landrigan,* 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

**Ground One:** Chatman contends the state court erroneously instructed the jury on depraved heart murder because he was indicted for deliberate design murder. This argument was fully addressed and rejected by the Mississippi Court of Appeals on direct appeal, which stated that while the statute under which Chatman was indicted:

> ... appears to create two distinct categories of murder, Mississippi case law has established that deliberate design murder and depraved heart murder have coalesced into one. (citations omitted) Although the statutory language defining depraved heart murder does not clearly state the requirement for deliberate design or malice aforethought, depraved heart murder involves an act so reckless that malice or deliberate design is implied.

*Chatman*, 952, So.2d at 948.

Federal habeas courts do not generally grant relief solely on the basis of an erroneous jury charge. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1992); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). "In examining habeas claims of improper jury instructions, the 'inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude.'" *Galvan v. Cockrell,* 293 F.3d 760, 764 (5th Cir. 2002) (quoting *Sullivan v. Blackburn,* 804 F.2d 885, 887 (5th Cir.1986)). The point is not whether the instruction was erroneous or even universally condemned; it is, instead, "whether the ... instruction by itself so infected the entire trial that the resulting conviction violates due process..." *Johnson v. Puckett*, 176 F.3d 809, 824-25 (5th Cir. 1999). *Mayabb v. Johnson*, 168

F.3d 863, 867 (5th Cir. 1999) quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see, also*, *Hughes v. Johnson*, 191 F.3d 607, 627 (5th Cir. 1999).

Jury instructions are considered as a whole, not in isolation. The record shows that the jury in Chatman's case was thoroughly and properly instructed on Mississippi law as to homicides done with deliberate design, with a depraved heart, in the heat of passion, in self-defense, or by culpable negligence. See instructions S-2, S-5A, S-12, S-14 and D9A. (R. vol. 1, pp. 41, 43-45, 47, 50, 52, 58-59). In addition to allowing the jury to find Chatman not guilty, Defendant's instruction D9A gave the jury the options of finding Chatman guilty of deliberate design murder, or depraved heart murder, or manslaughter, or culpable negligence manslaughter. The jury found him guilty of depraved heart murder. Under Mississippi law, "depraved heart murder subsumes deliberate design murder," and an instruction on the former does not amount to a constructive amendment of an indictment for the latter. *Brown v. State*, 781 So.2d 925, 928-29 (Miss. App. 2001). Instructing the jury as to depraved heart murder was proper under state law. Since Chatman has failed to show this was contrary to, or involved an unreasonable application of clearly established federal law, habeas relief on this ground is unwarranted.

**Ground Two:** Chatman complains that the trial court failed to inquire whether either party wished to poll the jury. The record does not reflect that Chatman requested to poll the jury, or that his counsel objected when the trial judge excused the jury without having done so; his trial attorneys did not raise the issue in the original or amended motions for new trial; and his appellate counsel did not raise the issue on appeal. (R. vol. 1, pp. 81-84; vol. 4, pp. 370, 376-382. Furthermore, in denying Chatman's application to seek post-conviction relief, the Mississippi Supreme Court held this issue procedurally barred by *Miss. Code Ann*. § 99-39-21(1)

due to Chatman's failure to raise it at trial or on direct appeal. In *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), the United States Supreme Court stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

The Fifth Circuit has held the Mississippi statute to be an independent and adequate state procedural bar to federal habeas relief. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). Since Chatman has failed to show that the statutory bar is inadequate or inconsistently applied, he has defaulted this claim in state court. Since he has failed to show cause for the default and actual prejudice, and has not demonstrated that failure to consider the claim will result in a fundamental miscarriage of justice, this Court is not authorized to review this issue. *Id*.

**Ground Three:** Chatman urges he is entitled to habeas relief based upon the prosecutor's referring to him as a "gang banger" after the trial judge sustained an objection to the remark. The term "gang bangers" appears in the record only twice. No objection was made to the prosecutor's first reference to Chatman and his severed co-defendants as gang bangers. (R. vol. 4, p. 360) The second time the prosecutor used the term, defense counsel objected, and the trial judge sustained the objection as to the epithet, but stated the prosecutor could "reference what the witnesses said with respect to what that bandanna[2] meant." (R. vol. 4, pp. 361-62) The

---

[2] Jarran Smith testified that when Chatman, McGillivray and Burbage arrived, Burbage had "a rag over his face like – that's like when we about to fight..." (R. vol. 3, p. 201) Smith picked up a brick on the porch of his house "because I saw the mask, so I'm thinking we're about to fight." (R. vol. 3, pp. 211, 215) He said "most people in gangs wear stuff like that when they're about to go, I guess, shoot somebody or something." (R. vol. 3, p. 216)

term was not used again. Chatman's complaint is that after the objection was sustained, the prosecutor said to the jury, "Disregard the use of the word that I just used, but y'all know what I'm talking about." Defense counsel's objection to this remark was overruled, and the judge instructed the jury to disregard "gang bangers." (R. vol. 4, p. 362) While the appellate court found the objection to the last remark should have been sustained, it held the error harmless in light of the ample evidence supporting the verdict, including Chatman's own testimony that he fired the shots that killed James. *Chatman*, 952 So. 2d at 950. When Chatman and his cohorts were arrested the same day James was killed, all three were tested, and only Chatman's hands revealed particles indicative of gunshot residue. (R. vol. 3, pp. 172-75)

In habeas proceedings, a prosecutor's allegedly improper remarks are reviewed under a strict standard, and provide sufficient ground for habeas relief "only if they are so prejudicial that they render the trial fundamentally unfair." *Harris v. Cockrell*, 313 F.3d 238, 245 (5th Cir. 2002).

> [I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (internal quotations and citations omitted).

*Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir. 2000). In *Harris*, the Court stated, "Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced

---

No objection was interposed to any of this testimony. A bandanna was located in the trunk of the car when the assailants were arrested, and another was in the personal effects taken from Michael Burbage when he was booked in at the jail. (R. vol. 3, p. 157-158)

misconduct or ... the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Id.*, 313 F.3d at 245. Based upon the record, this Court finds the state court decision - that the improper argument did not render Chatman's entire trial fundamentally unfair or lead to a decision influenced by prejudice - is neither contrary to nor an unreasonable application of clearly established federal law.

**Ground Four:** Chatman lists six instances of conduct which he contends demonstrate that his attorneys provided ineffective assistance of counsel.[3] However, as Respondent points out, the record does not show that Chatman ever presented these grounds to any state court. While he raised a general claim of ineffective assistance claim in his post-conviction application, his one-page Proposition 5 in that pleading describes no particular conduct. To properly present a claim of ineffective assistance, Chatman was required to "identify the acts or omissions of counsel ... alleged to be outside the bounds of reasonable professional judgment." *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). By failing to identify a single act or omission of his attorneys in his post-conviction claim of ineffective assistance, Chatman failed to properly present this claim to the state courts, thereby defaulting his Ground Four claim in this

---

[3]The record either belies or offers no basis for finding ineffective assistance as to any of Chatman's complaints: (1) The juror Chatman contends should have been stricken stated on the record she *could* be fair (R. vol. 1, p. 57-8); (2) the record does not identify who the bailiffs were in this case; (3) voir dire neither demonstrated nor suggested prejudice in the jury panel - three jurors knew Chatman from high school or living nearby, none knew Anthony James, and only three had heard of the case, and all these jurors stated they could be fair and impartial; (4) since nothing in the record indicates the unsequestered jury was subjected to any improper contact or influence, counsel cannot be deemed ineffective for not requesting sequestration; (5) Defense counsel did voice objections during Whitehead's testimony (R. vol. 3, pp. 175, 178-79) and vigorously cross-examined Whitehead with respect to his findings indicating the presence of gunshot residue on Chatman's hands, and Chatman, himself, testified he fired the fatal shots. The sixth instance is separately addressed below in discussion of Chatman's motion to supplement/amend.

proceeding. Since Mississippi law prohibits successive post-conviction applications, and Chatman meets none of the exceptions to this rule, he cannot now present these claims to the state court. *Miss. Code Ann.* § 99-39-27(9). Where, as here, state remedies are rendered unavailable by the petitioner's own procedural default, federal courts are barred from reviewing them. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). The record shows Chatman was represented by different counsel at trial and on appeal, and he has identified no external impediment which prevented him from properly presenting this claim in state court. Therefore, he has failed to show cause for the default. As the *Sones* Court stated, when "it is obvious that the unexhausted claim would be procedurally barred in state court, we will ... hold the claim procedurally barred from habeas review." *Id.*, citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993).

The undersigned further finds no "fundamental miscarriage of justice" will result from the Court's declining to hear Chatman's claim of ineffective assistance of counsel. The fundamental miscarriage of justice standard applies only to cases in which the petitioner shows, as a factual matter, that he did not commit the crime of conviction. *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) By his own testimony, Chatman established it was he who fired the shots which killed James.

In motion [18] Petitioner seeks to include an exhibit to support his claim for habeas relief with respect to his ineffective assistance of counsel claim (Ground Four ). Chatman claims his attorneys provided constitutionally ineffective assistance in failing to call Daniel Cockerham as a

witness in Chatman's murder trial. According to Chatman, Cockerham "alone had positively identified shooter and had given a statement to law enforcement that Petitioner was not the shooter." Cockerham's June 14, 2002 statement is included in the attachment filed May 7, 2010. [20, pp. 5-17 (Bates numbered pages 000168-180)]. There is no claim that Cockerham's existence was concealed or his statement withheld by the State. Indeed, the record of Chatman's criminal case shows lists Cockerham's name and address on a pre-trial supplemental notice of State's witnesses which indicates that Cockerham's statement to law enforcement had been provided in discovery. (R. vol. 1, p. 25)

The gist of the statement is that Cockerham, who lived next door to the apartment where victim Anthony James was staying, saw Chatman (a black male), and two white males pull up in front of Cockerham's house and confront James. He saw the big white male (McGillivray) go to the rear of the car and get a shotgun after the other white male (Burbage) popped the trunk. Cockerham went into his house, ran all the way through and out the back door, then crawled up under the house to see what was going to happen. From that vantage point he stated he could see the men only from the calves down. He heard only Chatman talking, saying, "shoot him, shoot that nigger now ..."[4] About three seconds later Cockerham heard two or three gunshots. [20, pp. 5-16]. While it is true that Cockerham says McGillivray shot James, Chatman admitted to law enforcement officers and testified at trial that *he* (Chatman) fired the shots that killed James, that *he* is the one who shot into the apartment where James was staying. And record

---

[4]James was a black male.

evidence shows that of the three men, only Chatman's hands revealed particles indicative of gunshot residue. (R. vol. 3, pp. 172-75). Chatman's defense at trial was not that he was not the shooter, but that he did not intend to kill James. Cockerham's statement would have been at odds with the defense on both points. Even if Petitioner's claim of ineffective assistance were properly before the Court for review in these proceedings, based upon the totality of the record evidence, Chatman's argument with respect to counsel's failure to call Cockerham as a witness would be insufficient to overcome the strong presumption that his counsel acted reasonably under the circumstances and with a sound trial strategy. *Strickland* v. *Washington*, 466 U.S. 668 (1984).

## **NEED FOR AN EVIDENTIARY HEARING**

When, as here, a petitioner for relief under Title 28 U.S.C. § 2254 has presented claims that are either contrary to law or plainly refuted by the record, an evidentiary hearing is not necessary. *See U. S. v. Green,* 882 F.2d 999, 1008 (5th Cir. 1989); *U.S. v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986); *U.S. v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985).

## **RECOMMENDATION**

The Court recommends that [18] the motion to file a supplemental brief or amend the petition for habeas relief be denied for the reasons stated above. Having considered the Petition, the Amended Petition, Respondent's answer, the record, and the relevant legal authority, the undersigned recommends that Petitioner's Applications for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED, and this matter, dismissed.

**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (effective December 1, 2009), within fourteen (14) days after being served a copy of this Report and Recommendation, any party who objects to the Report and Recommendation must file with the Clerk of this Court his written objections to the Report and Recommendation, and must serve said objections upon the other parties and submit them to the assigned District Judge. Within seven (7) days of service of the objection, the opposing party or parties must either serve and file a response or notify the District Judge that they do not intend to respond to the objection. An objecting party must specifically identify those findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections. A party who fails to file written objects to the proposed findings, conclusions, and recommendations within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 25th day of May, 2010.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE